IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CATRINA HARPER for, JANTANIQUE ROSS, | ) ) |
| | ) Case No. 2:04 CV 00980 DN |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| JO ANNE B. BARNHART, | ) **and ORDER** |
| Commissioner of Social Security, | ) |
| | ) Magistrate Judge David Nuffer |
| Defendant. | ) |

Before the Court is Jantanique Ross's (Plaintiff), appeal from the final administrative decision of the Commissioner of Social Security (the Commissioner), denying her application for Supplemental Security Income (SSI) benefits as a child under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381-1383c, filed on August 23, 2001.

Plaintiff alleged disability since September 1, 1999, due to attention deficit hyperactivity disorder (ADHD) (R. 62-64, 98). Plaintiff's application was denied initially (R. 40, 55-59), and upon reconsideration. (R. 39, 45-48.) After an initial and a supplemental hearing (R. 179-210), in a decision dated May 3, 2004, the administrative law judge (ALJ) determined Plaintiff was not disabled because the medical evidence indicated she had no marked or extreme limitations in any of the six areas of functioning and did not meet, medically equal or functionally equal an impairment in the Listing of Impairments (the Listings), 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 8-21.) The Appeals Council declined to review the ALJ's decision (R. 3-5), which made it the

Commissioner's final decision for purposes of judicial review.  20 C.F.R. § 416.1481 (2004).

Having considered the parties' memoranda, oral arguments, and the relevant law, the Court finds that the ALJ's decision is supported by substantial evidence and free of legal error.

### **STANDARD OF REVIEW**

The Court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  The findings of the Commissioner, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. 405(g) (2005).

"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *see also Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003; *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Grogan*, 399 F.3d at 1261-1262 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)); *see also O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) ("Evidence is insubstantial if it is overwhelmingly contradicted by other evidence.")*; Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992)("A finding of 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'")(citations omitted).

In conducting its review, a court must "examine the record closely to determine whether substantial evidence supports" the Commissioner's decision.  *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).  However, a court may "neither reweigh the evidence nor substitute [its]

judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001)(citation omitted); *see also Grogan*, 399 F.3d at 1262 (noting that although the court does not reweigh the evidence, it must meticulously examine the record as a whole to determine if the substantiality test has been met).

The Court's review also extends to determining whether the Commissioner applied the correct legal standards. *See Qualls*, 206 F.3d at 1371. Reversal may be appropriate where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

Plaintiff argues that the ALJ erred in evaluating whether Plaintiff's impairments met or equaled a listed impairment. Specifically, Plaintiff challenges the ALJ's finding by arguing that Plaintiff's ADHD met the criteria of Listing 112.11. In addition, at oral argument, Plaintiff argued that the ALJ erred in his application of the standards for evaluation of childhood disability under the Act's "Listed Impairment" reflecting disability based on this disorder. Defendant argues that the ALJ performed the proper legal analysis and that substantial evidence supported his decision. The Court agrees with Defendant.

### A. Legal Framework for Disability Determination of a Child

An individual under age eighteen will be considered disabled if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner's regulations require the ALJ to

apply a three-part test: (1) Determine whether the child is currently engaged in substantial gainful activity; if so, he is not disabled; if not, (2) determine whether the child has a severe impairment or impairments; if not, he is not disabled; if so, (3) determine whether the child's impairments meet, medically equal or functionally equal any listed impairment; if not, he is not disabled. See 20 C.F.R. § 416.924(b)-(d).

Under part three, the Commissioner will decide that the claimant's impairment is medically equivalent to an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1, if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 416.926(a). If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the Commissioner will decide whether it results in limitations that functionally equal such requirements. *Id.* To establish functional equivalence, the claimant must have a medically determinable impairment or combination of impairments that results in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* A claimant has a "marked" limitation in a domain when the claimant's impairment or combination of impairments interferes seriously with his ability to independently initiate, sustain, or complete activities. § 416.926a(e)(2)(i). "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme," and may arise when several activities or functions are limited or when one is limited. *Id.*

A claimant has an "extreme" limitation in a domain when the claimant's impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities. § 416.926a(3)(3)(i). "Extreme" limitation also means a limitation that is "more than marked," and may arise when several activities or functions are limited or

when one is limited.  *Id.*

The Commissioner considers how the claimant functions in activities in terms of six domains, broad areas of functioning intended to capture all of what a child can or cannot do.  See § 416.926a(b)(1).  These domains are:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.

Before making a specific review of the evidence, Plaintiff's two principal challenges to the analysis performed by the ALJ should be considered.  First, Plaintiff says "[t]he ALJ erred in his application of the standards for evaluating [sic] of childhood disability, including misapplying the criteria for meeting a Listed Impairment."  (Plaintiff's Memorandum Brief at 3, docket no. 12, filed April 15, 2005; Plaintiff's Reply Brief at 1, docket no. 19, filed July 22, 2005.)  Plaintiff argues that the ALJ based his decision on the fact that Plaintiff does better on medication, thus comparing two phases of her functioning, rather than comparing her functioning to that of other children her age.  (Plaintiff's Memorandum Brief at 39; Plaintiff's Reply Brief at 10.)  However, the ALJ prefaces his decision with the clear statement that "[t]he Administrative Law Judge will then compare the claimant's functioning to the typical functioning of children her age who do not have impairments."  (Decision at 3, R. 13.)  While the ALJ extensively compares the Plaintiff's medicated and non-medicated functioning, this is done in a thorough examination of the Plaintiff's condition.  The ALJ clearly compares the Plaintiff's function to grade-levels (Decision at 4, R. 14) and extensively references her relative performance in school, which is a peer-classified setting.  The decision notes many teachers' reactions from the classroom setting.

Plaintiff also argues that "[t]he ALJ . . . erred in his determination to ascribe limited credibility to Ms. Harper's and Jantanique's testimony despite the weight of the evidence in support of their allegations of disability." (Plaintiff's Memorandum Brief at 3; Plaintiff's Reply Brief at 1.)  The impression that the ALJ substantially discounted testimony of Plaintiff and her mother is erroneous.  The ALJ placed only three credibility qualifications on testimony:

> The undersigned finds Mrs. Harper's testimony credible to the degree Jantanique has ADHD.  (Decision at 7, R. 17.)

> Accordingly, the undersigned finds Mrs. Harper's testimony partially credible to the degree Jantanique has some problems with her social skills. (Decision at 8, R. 18.)

> The child's subjective complaints are considered credible only to the extent they are supported by the evidence of record as summarized in the text of this decision. (Decision at 11, R. 21.)

While these statements regarding *credibility* are the sorts of unsubstantiated conclusions that the Tenth Circuit condemns, *see, e.g., Hardman v. Barnhart*, 362 F.3d 676, 678-81(10th Cir. 2004), they do not materially affect the decision.  The ALJ was actually validating the mother's complaints of the claimant's ADHD and deficiencies in social skills when unmedicated, but concluding that the evidence as a whole (including the mother's testimony) showed that medication controlled many of the claimant's problems.  There was no specific rejection of the mother's testimony nor of the claimant's complaints, except to find that the symptoms did not persist under medication.  Reading the transcript reveals that treating all the mother's testimony as credible would not change the result.  But recognizing it as confined to the unmedicated status of the claimant harmonizes the record.

Neither of the claimant's two argued defects in the ALJ's decision are valid. Further examination of the record shows substantial evidence supports the ALJ's decision.

### B.     Whether Plaintiff's Impairments Met or Equaled a Listed Impairment

The ALJ found that Plaintiff had a severe impairment, ADHD (R. 12; Finding 3). The mere existence of a severe mental impairment, however, is insufficient to meet the requirements of child disability under the Act. Rather, to render her "disabled," Plaintiff's impairment had to result in functional limitations so "marked and severe" that they met, medically equaled, or functionally equaled a listed impairment. *See* 20 C.F.R. §§ 416.924(d), 416.925-.926a; *see also Hawkins v. Chater*, 113 F.2d 1162, 1164 (10th Cir. 1997)("It is beyond dispute that the burden to prove disability . . . is on the claimant."); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990)(diagnosis not enough to establish eligibility for benefits absent evidence of actual "disability"); *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988 )(existence of impairment not per se disabling; there must be proof impairment is of disabling severity).

The ALJ determined Plaintiff's impairment did not meet the requirements of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 12, Finding 4). Importantly, "[f]or a claimant to show that [her] impairment matches a listing, it must meet **all** of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 525, 530 (1990)(emphasis in original). The claimant, not the Commissioner, has the burden of producing evidence to show that she meets all of the requirements of a particular Listing. *See id.; see also Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987)(noting it is the claimant's burden to show that her impairment is presumptively disabling under the Listings). Plaintiff failed to meet this burden here.

### C.  Substantial Medical Evidence Supports the ALJ's Decision

In this case, as noted by the ALJ in detailed findings, the medical evidence did not reflect the criteria required in Listing 112.11, describing ADHD. (See R. 10.)  This listing requires a child to have ADHD with marked inattention, marked impulsiveness, and marked hyperactivity, resulting in at least two of the appropriate age group criteria in paragraph B2 of 112.02 (marked impairment in cognitive/communicative functioning, marked impairment in social functioning, marked impairment in personal functioning, and marked difficulties in concentration, persistence, and pace).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.11.

The medical records before the Court, reflect that Plaintiff's ADHD did not meet any of the required criteria.  The ALJ specifically noted that in December 2001, and August 2002, two DDS psychiatrists determined, after examining Plaintiff's medical record, that her impairments did not meet the severity requirements of a listed impairment. (R. 12, see R. 118, 159).  An ALJ is "entitled to rely on the opinions of reviewing physicians when considering whether the claimant meets the requirements of a listed impairment." *Ostronski v. Chater*, 94 F.3d 413 (8th Cir. 1996).[1]  Thus, substantial evidence supports the ALJ's finding that Plaintiff's ADHD did not meet or medically equal the requirements for any section of the Listing of Impairments. (R. 24, Finding No. 3.)

### D. Plaintiff's Impairments Did Not Functionally Equal a Listed Impairment.

The ALJ also properly determined Plaintiff's impairments did not have the functionally equivalent consequences of a listed impairment. ( R. 14-20.)  Plaintiff, who was born on April

---

[1] Pursuant to SSR 96-6p, the signature of a State agency medical consultant on form SSA-831-U5 (Disability Determination and Transmittal Form) ensures that a physician designated by the Commissioner has considered the question of medical equivalence.

10, 1993, was 8 years old, in the "school-age children (age 6 to attainment of age 12)" category, at the time her application was filed in September 2001, and was 11 years old at the time of the November 2001 final administrative decision. (R. 62). In assessing Plaintiff's functional limitations, the ALJ considered all evidence from medical and nonmedical sources, including parents, teachers, and other people who knew her. 20 C.F.R. § 416.926a(b)(3). Other relevant factors included how well Plaintiff could initiate and sustain activities, how much extra help she needed, the effects of structured or supportive settings, how she functioned in school, and the effects of medications and other treatment. § 416.926a(a). The ALJ set forth the relevant age group descriptors for evaluating Plaintiff's impairments in each area (R. 14-20), and made appropriate findings in each of the six areas.

### 1. Plaintiff had less than marked limitations in acquiring and using information.

Substantial evidence supports the ALJ's conclusion that Plaintiff had less than marked limitations in acquiring and using information. (R. 14-15.) In January 2000, Dr. Kovnick found Plaintiff's cognitive abilities appeared to be average (R. 150). He diagnosed ADHD and recommended medication (R. 151), but Ms. Harper did not start Plaintiff on Adderall until May 2000 (R. 146). Thereafter, the evidence establishes that, although she was behind in some areas such as reading, as long as she was compliant with her medication, Plaintiff performed much better academically and she progressed through school at appropriate grade levels from first through fifth grades without repeating any grades (R. 81-82, 126, 129, 139, 143, 145, 171, 174, 176). In fact, in February 2004, Ms. Harper reported that Plaintiff's school report was excellent and she was maintaining good grades (R. 173). See *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)(finding the claimant's Crohn's disease "well-controlled" and therefore not disabling);

*Dixon v. Heckler*, 811 F.2d 506, 508 (10th Cir. 1987)(claimant's medical conditions were well-controlled by medication without side effects).

During the consultative examination in August 2002, Dr. Morse noted that Plaintiff attended a regular fourth-grade class, and estimated that Plaintiff had average to low average intellectual functioning (R. 156, 157).  He also noted that she appeared to be successfully maintained on her medications because she did not show any diagnostic signs of ADHD during the examination (R. 157).  As an examining physician, Dr. Morse's independent clinical findings provided substantial evidence in support of the ALJ's determination that Plaintiff had less then marked limitations in acquiring and using information (R. 14-15).  *See Hamilton*, 961 F.2d at 1498 (holding that the ALJ may rely on the reports of examining physicians where they are based on objective findings).

In December 2001, and August 2002, nonexamining DDS psychiatrists reviewed the record and concluded Plaintiff had a less than marked limitation in this area of functioning  (R. 120, 161).  The ALJ could consider the DDS psychiatrists' opinions as expert opinion evidence from a nonexamining source.  See SSR 96-6p.  Based on the overall evidence of record, the ALJ properly found Plaintiff had a less than marked limitation in the area of acquiring and using information (R. 14-15).

> **2.    Plaintiff had less than marked limitations in her ability to attend and complete tasks.**

Substantial evidence also supports the ALJ's conclusion that Plaintiff had less than marked limitations in her ability to attend and complete tasks.  (R. 15-17).  As noted above, Plaintiff had significant difficulty remaining on task and paying attention when she did not take her medication, but when she was compliant with her medication, Plaintiff was alert, oriented,

and cooperative (R. 81-82, 113-14, 125, 130, 139, 142, 143, 171).  She displayed no particular difficulty during the interview with Dr. Morse and she was fully cooperative without any signs of ADHD, because of her successful medical treatment (R. 156).  Dr. Morse attributed her normal behavior to effective medical treatment (R. 157).  Her teacher indicated that Plaintiff's problems were more manageable when she took her medication.  Moreover, her grades were good when she complied with medical treatment, and she was never held back, substantiating the ALJ's determination that Plaintiff had less than marked limitations in attending and completing tasks (R. 15-17).  See Kelley, 62 F.3d at 338 (finding the claimant's Crohn's disease "well-controlled" and therefore not disabling); Dixon, 811 F.2d at 508 (claimant's medical conditions were well-controlled by medication without side effects).

    The DDS psychiatrists' opinions that Plaintiff had less than marked limitations in this area of functioning (R. 120, 161), also supported the ALJ's findings as he could consider the DDS psychiatrists' opinions as expert opinion evidence from a nonexamining source.  See SSR 96-6p.  Based on the overall evidence of record, the ALJ properly found Plaintiff had a "less than marked limitation" in the area of attending and completing tasks (R. 15-17).

    **3.    Plaintiff had less than marked limitations in interacting and relating with others.**

    Substantial evidence also supports the ALJ's conclusion that Plaintiff had less than marked limitations in interacting and relating with others (R. 17-18).  Although Plaintiff had sometimes fought with her classmates and her brother, her condition significantly improved when she took her medication (R. 81-82, 113-14, 125, 130, 139, 142, 143, 171).  See Kelley, 62 F.3d at 338 (finding the claimant's Crohn's disease "well-controlled" and therefore not disabling); Dixon, 811 F.2d at 508 (claimant's medical conditions were well-controlled by medication

without side effects).  Dr. Miller, Plaintiff's treating psychiatrist, specifically noted in October 2001, that Plaintiff got along well with her mother and had friends (R. 113, 114).  See *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995)(treating physician's opinion entitled to controlling weight if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988); 20 C.F.R. § 416.927(d)(4), (5)(commissioner will give more weight to the opinion of a specialist about medical issues related to his area of specialty than to a nonspecialist).

And the DDS psychiatrists' opinions that Plaintiff had less than marked limitations in interacting and relating with others also supported the ALJ's determination (R. 121, 160).  See SSR 96-6p.

Weighing all of the evidence, the ALJ properly determined that Plaintiff had less than marked limitations in interacting and relating with others (R. 17-18).

    **4.**  **Plaintiff had no limitations in moving about and manipulating objects**.

Substantial evidence supports the ALJ's conclusion that Plaintiff had no limitations in moving about and manipulating objects (R. 18-19).  For example, Plaintiff reported to Dr. Morse that she liked to play basketball, jump rope, and play games (R. 156).  Ms. Harper reported that Plaintiff could stand, walk, run, and lift normally (R. 156).  In October 2001, Plaintiff's teacher reported that Plaintiff had "great" motor skills (R. 81).  At the hearing, Plaintiff testified that she enjoyed playing basketball and swimming (R. 189).  The DDS psychiatrists found Plaintiff did not have any limitations in her ability to move about and manipulate objects (R. 121, 160).  And Ms. Harper did not assert that Plaintiff had any problems in her motor functioning.  Based on this

evidence, the ALJ properly determined Plaintiff did not experience any limitations in this area.

### 5.   Plaintiff had no limitations in caring for herself.

Substantial evidence supports the ALJ's conclusion that Plaintiff had no limitations in caring for herself (R. 19). Ms. Harper told Dr. Morse that Plaintiff was able to bathe, dress, feed herself, and care for her personal needs (R. 156). Her teacher noted that Plaintiff was well-groomed (R. 81). There is no indication that Plaintiff was unable to have her needs met or care for herself and the DDS psychiatrists found Plaintiff had no limitations in caring for herself (R. 121, 160). Thus, the ALJ correctly determined that Plaintiff had no limitations in this area of functioning.

### 6.   Plaintiff had no limitations in her health and physical well-being.

Substantial evidence also supports the ALJ's conclusion that Plaintiff had no limitations in her health and physical well-being (R. 20). The medical evidence shows that Plaintiff's ADHD is well-controlled when she is compliant with her medication (R. 143, 145, 157). In April 2002, almost a year after Plaintiff started taking Adderall, Ms. Harper took her off the medication because of stomach upset (R. 138). Despite Dr. Miller's attempts to start Plaintiff on a different medication (R. 132, 134, 136, 137, 138), Plaintiff did not start taking Concerta until September 2001 (R. 130). Thereafter, her condition was well-controlled without side-effects when she took this medication (R. 126, 139, 171, 172-175). *See Kelley*, 62 F.3d at 338 (finding the claimant's Crohn's disease "well-controlled" and therefore not disabling); *Dixon*, 811 F.2d at 508 (claimant's medical conditions were well-controlled by medication without side effects). The lack of evidence showing any adverse effects from her medical treatment supported the ALJ's determination that she had no limitations in the area of health and physical well-being (R.

20).

In sum, both the medical and non-medical subjective evidence shows Plaintiff did not have "marked" limitations in two broad areas of functioning or an "extreme" limitation in any one area. *See* 20 C.F.R. § 416.926a(b)(2). Because Plaintiff's impairments did not meet, medically equal, or functionally equal any listed impairment, her impairments did not result in marked and severe functional limitations and she was properly found not disabled by the ALJ. § 416.924(d)(2). Moreover, as the ALJ noted (R. 13), Plaintiff's symptoms seem to be well-controlled by proper medication, and the difficulties associated with her symptoms, such as being one grade level behind, are directly attributable to her failure to take prescribed medications. The ALJ's legal analysis was proper and thorough. The ALJ's findings, conclusions and decisions were well-supported by and in line with both treating and examining doctor's opinions.

Thus, because the evidence shows that Plaintiff has not satisfied her burden showing all the listing criteria are met, and because the ALJ indicated that he had considered the listing and evidence related thereto in his analysis, the Court rejects Plaintiff's arguments.

## **CONCLUSION**

For all the foregoing reasons, the Court concludes that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence and is not legally erroneous. Accordingly, Plaintiff's request for reversal or remand is DENIED and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 22nd day of February 2006.

                                                s/David Nuffer
                                                David Nuffer
                                                Magistrate Judge